**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-CV-22316-DAMIAN

SONYA Y. WRIGHT,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.
_____/

## ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT [ECF NOS. 18 AND 25]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment [ECF Nos. 18 and 25]. Plaintiff, Sonya Wright, seeks reversal and remand of the Decision of the Administrative Law Judge ("ALJ") denying her claim for Supplemental Security Income ("SSI"). This matter is before the undersigned pursuant to the parties' Consent to Magistrate Jurisdiction, in which the parties jointly and voluntarily elected to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment [ECF No. 21].

THE COURT has fully considered the parties' briefing [ECF Nos. 18, 25, 36], the administrative record [ECF No. 11], and all relevant authorities, and is otherwise duly advised in the matter. For the reasons that follow, the Court grants Plaintiff's Motion for Summary Judgment [ECF No. 18] and denies Defendant's Motion for Summary Judgment [ECF No. 25].

# I.    BACKGROUND

## A.    Ms. Wright's Claim For Benefits

Ms. Wright alleged disability beginning on January 1, 2010, due to schizoaffective disorder, bipolar type; Arnold-Chiari malformation; back injury; and "bipolar/ralondshiarya/right extremities loss." (R. 113-114, 130, 297-305, 326).[1] Ms. Wright was 47 years old on March 23, 2017, the date her application was filed, and subsequently changed age category by the time the ALJ's Decision issued such that she falls within the definition of a person closely approaching advanced age (age 50-54). (R. 24); *see also* 20 CFR § 416.963. She presently lives with her mother, who, although in her 90s, does most of the household chores and helps Ms. Wright with personal care tasks. (R. 18). Ms. Wright has a tenth-grade education and past work experience as an elevator operator. (R. 46, 105-06, 327).

## B.    Ms. Wright's Testimony Regarding Her Disabilities

At a hearing before the ALJ on December 5, 2019, Ms. Wright appeared and testified regarding her condition. (R. 45-112). She testified to suffering from pain in her spine since 2006 and from migraines since she was a child. (R. 49). She further testified that the pain is constant and ranges from her spine, to the back of her neck, and to her right hand. (R. 89). Ms. Wright's prescriptions include Seroquel and Remeron, and she testified that her doctor discontinued her Xanax prescription the day before the hearing. (R. 88). Ms. Wright also

---

[1]  All references to "R." refer to the transcript of the Social Security Administration filed on October 12, 2021. [ECF No. 11]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

testified that she cannot afford to fill her prescriptions. (R. 54). Therefore, she explained, she takes whatever medicine she can afford for her pain. (R. 54, 89).

According to Ms. Wright, a typical day starts for her around 11:00 AM, but she lays back down until around 2:00 PM. (R. 72). She spends most days inside her room, although she occasionally walks outside to pick up her granddaughter from school and goes to church service on Sundays if she has transportation. (R. 72, 75, 87). Ms. Wright testified that she can cook small things for herself and occasionally does the dishes, but her then 91-year-old mother does most of the chores around the house, goes grocery shopping for her, and helps her bathe. (R. 58, 71, 76).

As for her past relevant employment, Ms. Wright testified that she worked most recently "[p]assing out flyers" but it was not full time, and she could not remember what year she did that. (R. 47). From 2003 to 2007, she worked as an elevator operator at construction sites, where she would rotate between sitting and standing while pressing the button for the lift. (R. 48). She testified that she stopped working because of the pain from the back of her neck "down through the spine." (R. 49).

### C. *Expert Opinions And Relevant Medical Evidence Regarding Ms. Wright*

The record contains treatment notes from numerous doctors, social workers, and other professionals regarding Ms. Wright's condition. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Ms. Wright's mental and physical impairments, as well as the opinion of the impartial vocational expert.

### 1. _Relevant Medical Evidence And Expert Opinions Regarding Her Mental Impairments_

Ms. Wright was admitted to Fort Lauderdale Hospital in March 2014, October 2014, and February 2015 for bipolar disorder, schizophrenia, and aggression toward others. (R. 518-31). In March 2017, she was admitted to Jackson Memorial Hospital involuntarily via the Marchman Act but did not meet criteria for admission and was discharged. (R. 495).

Ms. Wright was treated from November 2013 through August 2014 at Jackson Health Systems and was primarily diagnosed with mood disorder with psychotic features. (R. 728, 741). In January 2014, she was referred to New Horizons Mental Health for treatment of bipolar disorder and reported "depression, suicidal impulses, hearing voices, manic episodes, and difficulty sleeping." (R. 420, 466). On January 28, 2014, Reginald Thompson, Ed.D., diagnosed her with bipolar disorder and brain disorder, assessed she had a global assessment of functioning ("GAF") of 46, and recommended medication management and individual therapy. (R. 426, 472).

After her January 28, 2014, assessment, Ms. Wright did not return to New Horizons until May 2016, and from then on, saw Joseph Poitier, M.D., regularly for psychiatric evaluations. (R. 415-19). Dr. Poitier diagnosed Ms. Wright with schizoaffective disorder bipolar type. (R. 418, 455). A medical summary completed in 2017 by Dr. Poitier and Reeva Riviere, Ms. Wright's SOAR case manager, indicated that Ms. Wright was diagnosed with Arnold Chiari Malformation in 2007, a "condition where the brain tissue extends into the spinal canal and can cause symptoms such as dizziness, stiff neck, arm weakness and breathing problems[,]" which causes her to experience numbness on her right side and problems with her balance and pain. (R. 440, 443). Dr. Poitier saw Ms. Wright monthly for

medical assessments from 2018 through 2019. (R. 671-79, 685-88, 691-99, 705-08, 799-816). During that time, her diagnosis remained schizoaffective disorder, bipolar type, for which she was treated with Xanax, Seroquel and Remeron. *Id.* The day before the hearing, on December 4, 2019, Dr. Poitier evaluated Ms. Wright and documented significant abnormalities, including disheveled appearance, uncooperative attitude, fast speech, agitated motor behavior, inappropriate affect, angry mood, loose associations in thought process, scattered thought content, poor insight, and poor reliability. (R. 799). Dr. Poitier also noted that Ms. Wright was "agitated [and] disruptive" and that a medication change was required. (R. 800). At that time, Dr. Poitier assessed Ms. Wright to have a GAF of 45.

The State agency consultant, Dawn Jackson, Psy.D., opined on April 5, 2017, that Ms. Wright's mental impairments result in moderate limitations in her ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. (R. 118). On October 24, 2017, State agency consultant, Jennifer Meyer, Ph.D., opined that Ms. Wright's mental impairments result in moderate limitations in her ability to: (1) interact with others; and (2) concentrate, persist, or maintain pace; and in mild limitations in her ability to: (1) understand, remember, or apply information; and (2) adapt or manage oneself. (R. 136).

### 2. *Relevant Medical Evidence And Expert Opinions Regarding Her Physical Impairments*

Insofar as Ms. Wright's physical impairments are concerned, the record reflects a history of Chiari malformation since at least 2007. (R. 513, 542, 752). The record also shows evidence of degenerative disc disease in the cervical and lumbar spine, as well as retained

bullet fragments in the back from a shooting that occurred when Ms. Wright was seventeen years old. (R. 435, 536–542, 769-78).

From July 2015 through January 2019, Ms. Wright was treated for what was later diagnosed as "biliary colic with gallstone and carpal tunnel syndrome of the right wrist." (R. 657-67). She saw Ian Cote, M.D., in February 2017 for pain "radiating to the bilateral upper extremities and lower extremities." (R. 429). Dr. Cote opined that he did not believe Ms. Wright's Chiari malformation was the cause of her pain due to her complaints of carpal tunnel syndrome. (R. 429-30). In that same month, Ms. Wright was seen at Jackson Memorial Hospital and was diagnosed with acute carpal tunnel syndrome. (R. 500-01).

In May 2017, the State agency consultant, Warren Feldman, M.D., opined that Ms. Wright is able to lift/carry 20 pounds occasionally and ten pounds frequently; stand/walk about six hours during a workday; and sit about six hours during a workday. (R. 139). He also opined that she can occasionally climb ladders/ropes/scaffolds and ramps/stairs, and frequently stoop, kneel, crouch, and crawl. (R. 139-40). However, Dr. Feldman further opined that due to the nature of her impairments, Ms. Wright should avoid activities that would cause her to change position of her back frequently and should avoid climbing as much as possible. (R. 140). According to Dr. Feldman, she also needs to avoid concentrated exposure to extreme cold or heat, and humidity, and avoid even moderate exposure to vibration and hazards. *Id.*

In May 2019, after she was in an auto accident, Ms. Wright was examined by Gerald L. Nickerson, Jr., M.D., who indicated Ms. Wright had post concussive syndrome, post traumatic headaches, cervical sprain/strain, thoracic sprain/strain, lumbar sprain/strain, bilateral shoulder sprain/strain, and left elbow sprain/strain. (R. 755). An October 2019

physical therapy re-evaluation indicates Ms. Wright's pain level was a 6 out of 10 in the cervical spine, lumbar spine, and bilateral shoulder, and a 5 out of 10 in the thoracic spine and left elbow. (R. 786).

### 3. *Vocational Expert Testimony*

At the hearing before the ALJ, an impartial vocational expert testified that a person with Ms. Wright's same age, education, work experience, and residual functional capacity ("RFC") cannot perform her past work experience as an elevator operator at construction sites. (R. 107). When asked by the ALJ whether jobs exist in significant numbers in the national economy for a person with Ms. Wright's age, education, work experience, and RFC, the vocational expert provided three representative occupations such a person could perform: laundry sorter, mail clerk/sorter, and produce sorter. (R. 108-09).

## II.    PROCEDURAL HISTORY

Ms. Wright applied for SSI benefits on March 23, 2017. (R. 113-14). Her application was initially denied on May 25, 2017, and again, upon reconsideration on October 27, 2017. (R. 150-60). Ms. Wright then requested a hearing, which was held before the ALJ on December 5, 2019. (R. 36). On July 16, 2020, the ALJ issued the Decision finding that Ms. Wright has not been disabled under section 1614(a)(3)(A) of the Social Security Act since March 23, 2017, the date the application was filed. (R. 11, 25). Ms. Wright requested review of the ALJ's decision. (R. 1-4). On October 13, 2020, the Appeals Council denied her request for review, rendering the ALJ's decision as the Social Security Commissioner's "final" determination. *Id. See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on June 23, 2021, Ms. Wright filed the instant action before the Court seeking review of the ALJ's decision. [ECF No. 1]. *See* 42

U.S.C. § 405(g). Thereafter, Ms. Wright filed a Motion for Summary Judgement on March 3, 2021 [ECF No. 18]. Defendant, Kilolo Kijakazi, Acting Commissioner of the SSA ("Defendant" or the "Commissioner"), filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on May 2, 2022 [ECF No. 25]. Ms. Wright then filed her Reply Brief on May 31, 2022 [ECF No 28].

Both parties' Motions are fully briefed and ripe for adjudication.

## III.    THE ALJ'S DECISION

The ALJ concluded that Ms. Wright is not disabled under Section 1614(a)(3)(A) of the Social Security Act based on the five-step process that must be used for evaluating whether a claimant is disabled. (R. 25). *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has either a medically determinable impairment ("MDI") or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id*. If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id*.

8

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor.*" Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any of her past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the

9

Social Security Administration ("SSA") to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

Applying the foregoing process to Ms. Wright's claim for benefits, the ALJ found that: (1) Ms. Wright has not engaged in SGA since March 23, 2017 (the application date); (2) her "schizoaffective disorder, bipolar type; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and Arnold-Chiari malformation" were severe impairments; however, (3) her combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. (R. 12–15). Further, the ALJ found that Ms. Wright had the RFC to perform light work as defined in 20 C.F.R 416.967(b), except that she must avoid concentrated exposure to extreme temperatures and humidity, must avoid moderate exposure to vibrations and work hazards, is limited to occasional stooping and balancing, cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and is limited to frequent kneeling, crouching, and crawling. (R. 17). The ALJ further found that Ms. Wright can understand and remember simple instructions; perform simple, routine, and repetitive tasks; make simple work-related decisions; and interact frequently with supervisors, and occasionally with coworkers and with the general public, but cannot perform occupations requiring fast-paced production. *Id*. As such, according to the ALJ, (4) Ms. Wright was unable to perform any past relevant work; but (5) she could perform a significant number of jobs in the national economy. (R. 23–24).

Therefore, the ALJ determined that Ms. Wright was not disabled under section 1614(a)(3)(A) of the Social Security Act. (R. 25).

## IV.    ISSUES RAISED IN THE PARTIES' MOTIONS

In her Motion for Summary Judgment, Ms. Wright raises four challenges to the ALJ's decision: (1) the ALJ's reasons for discrediting Ms. Wright's testimony about her mental impairments are not based on substantial evidence; (2) the assessment of Ms. Wright's mental limitations in the domains is not supported by substantial evidence; (3) the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence; and (4) Defendant failed to sustain her burden of establishing that there is other work in the national economy that Ms. Wright can perform. [ECF No. 18]. Based on these challenges to the ALJ's Decision, Ms. Wright argues that the ALJ's decision should be reversed and remanded with instructions to (1) reassess Ms. Wright's mental limitations in the four domains; (2) reassess her subjective complaints; (3) reassess her RFC; (4) obtain new vocational witness testimony and pose a complete hypothetical question to the witness; and (5) issue a new decision supported by substantial evidence and proper legal standards. *Id.* at 25.

In response to Ms. Wright's Motion for Summary Judgment, the Commissioner filed a Cross-Motion for Summary Judgment and argues that the ALJ's decision should be affirmed because substantial evidence supports her final decision. *See* [ECF No. 25].

11

## V.    LEGAL STANDARDS[2]

The Court's review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but is less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.    ANALYSIS

The Court discusses each of Ms. Wright's challenges below.

### A. *Whether the ALJ Properly Evaluated Ms. Wright's Testimony About Her Mental Impairments*

Ms. Wright first argues that the ALJ improperly found her testimony regarding the severity of her symptoms was not consistent with the record. (Mot. at 12). Specifically, Ms. Wright argues that the ALJ's findings that her "mental status examinations continued to show no significant abnormalities" and that she "remained stable with routine medication

---

[2] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB cases is generally applicable to SSI cases.

12

management" (R. 20) are not supported by the record as a whole. (Mot. at 12). Ms. Wright also argues that the ALJ's conduct during the hearing "reflects a fundamental misunderstanding of chronic mental illness." (Mot. at 14). Lastly, Ms. Wright claims that the record documents fluctuating symptoms, and the ALJ's focus on the times when Ms. Wright was doing better was misplaced under Eleventh Circuit precedent. (Mot. at 15-16).

To prove disability based on a claimant's subjective complaints, the claimant must first provide evidence of the medical condition triggering the claimant's alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002). Moreover, the claimant must either: (a) provide objective medical evidence confirming the severity of the claimant's alleged symptoms; or (b) show that the claimant's objectively determined medical condition could reasonably be expected to cause the claimant's alleged symptoms. *Id.* If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant shows that her medically determined impairment could reasonably be expected to produce the claimant's alleged symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether the claimant's alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225–26.

When evaluating whether the claimant's alleged symptoms limit the claimant's ability to work, the ALJ may discredit the claimant's subjective statements if they are inconsistent with the evidence in the record. *See* 20 C.F.R. §§ 404.1629(c)(4) (2017), 416.929(c)(4) (2017); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). The ALJ must show that the determination is not "a broad rejection" preventing the reviewing court from concluding that the ALJ considered the medical condition as a whole. *Id.*

13

Here, the Court finds that the ALJ properly articulated her reasons for not crediting Ms. Wright's testimony regarding the intensity, persistence, and limited effects of her symptoms. As the ALJ noted, the record reflects a long history of schizoaffective disorder, hallucinations, and delusions before the application date. (R. 20). However, as the ALJ explained, Ms. Wright's psychotic symptoms reportedly improved with medication, and no complaints of hallucinations or delusions were noted during the relevant period. (*See, e.g.* R. 20, 404, 484, 495, 518-19, 527, 676, 687, 718, 727 799, 811).

The ALJ also considered Ms. Wright's treatment history with Dr. Poitier, her treating physician at New Horizons, in detail—from before the relevant period (May 2016) to the most recent examination in the record (December 2019). (R. 20-21). The ALJ noted that, from 2018 to 2019, Ms. Wright continued to see Dr. Poitier on a routine basis and that Dr. Poitier generally noted that she was stable and that, despite some findings of labile mood, hyperactivity, and agitated motor activity, examinations were otherwise generally unremarkable. (R. 21, 678, 685-87). The ALJ further discussed treatment records from 2019 which continued to show agitated motor behavior, hyperactivity, and labile moods, plus additional abnormalities at times. (R. 21, 676-77, 799-800, 802, 808, 811). However, the ALJ weighed these 2019 records from New Horizons, showing additional abnormalities, against treatment records from CitiMED, where Ms. Wright had been treated for physical issues since March 2019. (R. 21). As the ALJ observed, the CitiMED records showed no indication of significant psychiatric abnormalities, and other treatment records consistently showed no reports of hallucinations, delusions, or suicidal ideation during the relevant period. (R. 21, 676-78, 685-87, 799-800, 802, 808,754). Contrary to Ms. Wright's arguments, the Court finds that in reviewing these records, the ALJ properly considered Ms. Wright's "better days and

14

worse days." *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019) ("We agree with our sister Circuits that people with chronic diseases can experience good and bad days."). Thus, the Court finds that the ALJ made "[a] clearly articulated credibility finding with substantial supporting evidence" in finding Ms. Wright's testimony was not consistent with the record. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) ("If the ALJ decides not to credit a claimant's testimony as to her pain, [s]he must articulate explicit and adequate reasons for doing so.").

Next, Ms. Wright argues that the ALJ's conduct during the hearing reflects a "fundamental misunderstanding of chronic mental illness." (Mot. at 14). After reviewing the hearing transcript, the Court does not find that the ALJ's conduct indicates a fundamental misunderstanding of chronic mental illness. Moreover, Ms. Wright's mental impairment did not preclude the ALJ from questioning her at the hearing and weighing her testimony, and Ms. Wright does not provide any legal or record support to persuade the Court otherwise.

Lastly, Ms. Wright claims that the record documents fluctuating symptoms and that the ALJ focused on the times when Ms. Wright was doing better, contrary to Eleventh Circuit precedent. (Mot. at 15). In support, Ms. Wright cites to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267-68 (11th Cir. 2019), and *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021).

In *Schink*, the Eleventh Circuit found the ALJ's step two determination that the claimant's bipolar disorder was not severe was not supported by substantial evidence considering the "episodic nature" of the disorder and the evidence of record that showed the disorder had more than a minimal effect on the claimant's ability to work. 935 F.3d at 1268. The Eleventh Circuit explained that "people with chronic diseases can experience good and

15

bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work[.]" *Id.* at 1267. Because the RFC assigned by the ALJ in the *Schink* case did not reflect ***any*** mental limitations, the Eleventh Circuit found that the ALJ "evidently failed" to consider the claimant's mental impairments, including bipolar disorder, at step four. *Id.* at 1269-70. The Eleventh Circuit reversed the district court's decision on those issues and remanded the case. *Id.* at 1270.

More recently, in *Simon*, the claimant asserted that he was disabled due to various psychiatric conditions, including chronic depression, anxiety, and bipolar disorder. 7 F.4th at 1097. In denying disability benefits, "the ALJ gave little or no weight to three pieces of evidence in the record indicating that [the claimant's] mental illness prevents him from maintaining a job: (1) the opinions of [the claimant's] treating psychiatrist, (2) the opinions of a consulting psychologist who examined [the claimant] at the request of the SSA, and (3) [the claimant's] own testimony as to the severity of his symptoms." *Id.* Instead, in that case, the ALJ relied upon "snapshot" reports of stability and progress by treating physicians to discount their opinions of disability as being inconsistent with the medical record. *Id.* at 1106. In remanding the claim to the ALJ, the Eleventh Circuit repeated *Schink*'s cautionary note that "people with chronic diseases can experience good and bad days," and concluded that the ALJ did not "articulate adequate reasons for discounting this evidence, which provided support for a finding of disability." *Id.* at 1097.

This Court acknowledges that individuals, like Ms. Wright, who suffer from such mental disorders "can experience good and bad days." *Schink*, 935 F.3d at 1267. However, a review of the record reflects that the ALJ did not just rely on "a snapshot of any single moment. . . to discredit the remainder of a psychiatrist's findings[.]" *Simon*, 7. F.4th at 1106.

16

As the ALJ observed, the record contains no complaints of hallucinations or delusions during the relevant period, as opposed to the long history of hallucinations and delusions before Ms. Wright reestablished care with New Horizons in 2016. *Supra*, 14-15. The ALJ also noted that although the record demonstrates some abnormalities in Ms. Wright's symptoms since 2016, her symptoms reportedly improved with medication. (R. 20). The ALJ further noted that Ms. Wright's one emergency room visit for psychiatric symptoms during the relevant period was in the context of illicit drug use. *Id*. In other words, the ALJ properly accounted for "bad and good days" during the relevant period. Thus, the Court finds that the ALJ's determination that Ms. Wright's testimony about her symptoms was not consistent with the record is based on substantial evidence. To the extent Ms. Wright contends the ALJ overlooked various abnormalities in the record, such arguments do not disturb the substantial evidence supporting the ALJ's findings, and this Court cannot reweigh the evidence or substitute its own judgment for the Commissioner's. *See Moore,* 405 F.3d at 1213 ("To the extent that [claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]'" (citation omitted)).

In sum, the Court finds that the ALJ's determination that Ms. Wright's testimony is not consistent with the record is based on substantial evidence. Therefore, to the extent Ms. Wright seeks summary judgment based on the ALJ improperly discrediting her testimony regarding her symptoms, the Court denies the Motion.

**B.** *Whether The ALJ's Assessment Of Ms. Wright's Mental Limitations In The Domains Is Supported By Substantial Evidence*

Ms. Wright next argues that substantial evidence does not support the ALJ's findings in two of the "paragraph B" domains—the domains of interacting with others and of managing oneself. (Mot. at 16). Therefore, she urges the Court to remand with instructions to reassess the severity of her mental limitations in those domains. *Id.*

To determine whether the severity of a claimant's mental impairments meets or is medically equal to the criteria of Listings 12.03 (pertaining to Schizophrenia spectrum and other psychotic disorders) and Listing 12.04 (pertaining to depressive, bipolar, and related disorders), the ALJ considers whether the "paragraph B" criteria are satisfied. *See* 20 C.F.R. 416.920a. To satisfy the "paragraph B" criteria, the mental impairments must result in either one extreme limitation or two marked limitations in four broad areas of function. *Id.* The four broad areas, or "domains," of function are: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*

Here, the ALJ determined that Ms. Wright's severe mental impairment of schizoaffective disorder, bipolar type, results in a mild limitation in the domain of (1) understanding, remembering, or applying information; and moderate limitations in the domains of (2) interacting with others; (3) concentration, persistence, or pace; and (4) managing oneself. (R. 12, 16). The ALJ then determined that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [of Listing 12.03 or 12.04] are not satisfied." (R. 16).

Ms. Wright argues that substantial evidence does not support the ALJ's findings in the domains of interacting with others and managing oneself. (Mot. at 16).

### 1. *Interacting With Others*

Ms. Wright argues that the ALJ's finding that she has a moderate limitation in interacting with other is based on a misreading of the record and, therefore, cannot be sustained. (Mot. at 17).

The domain of interacting with others refers to the abilities to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2). Examples include cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. *Id*. A finding of a "moderate" limitation means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt, 404, Subpt. P, App. 1, § 12.00(F)(2)(c). A "marked" limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. at § 12.00(F)(2)(d).

In support of her finding that Ms. Wright had a moderate limitation in interacting with others, the ALJ stated:

> In interacting with others, the claimant has a moderate limitation. The claimant reported limited social interaction as well as problems getting along with people (*see, e.g.*, 7E/5-7; Hearing Testimony). However, the claimant testified that while she sometimes has problems getting along with others, she is generally a "people person" and admitted to being able to interact with strangers in public (Hearing Testimony). Additionally, while some examinations have noted the claimant to be irritable or uncooperative with agitated motor activity and

abnormal mood and affect (*see, e.g.*, 5F/21; 18F/1, 10), the claimant was often noted to be cooperative with appropriate mood and affect (*see, e.g.*, 1F/2, 4, 5, 6, 7, 8, 11, 16; 13F/67; 14F/7, 8, 9, 16, 17, 18; 16F/8, 17; 18F/4, 7). Furthermore, the claimant has reported being able to shop in stores and she testified that she attends church regularly (7E/4; Hearing Testimony). She also described supportive relationships with members of her church and reported attending meetings there regularly (Hearing Testimony).

(R. 16). Ms. Wright argues that the ALJ's finding here is based on a misreading of the record for three reasons: (1) it was inappropriate for the ALJ to rely on her testimony given her deteriorating mental functioning at the time of the hearing; (2) the Function Report cited in the ALJ's decision does not support her findings; and (3) several treatment notes cited by the ALJ are either not relevant or do not support a finding that Ms. Wright was "cooperative with appropriate mood and affect." (Mot. at 17-19).

Ms. Wright first argues that it was inappropriate for the ALJ to rely on her hearing testimony that she was a "people person," "admitted to being able to interact with strangers in public," and "described supportive relationships with members of her church" given her deteriorating mental condition at the time of the hearing, as indicated by a mental evaluation performed the day before. (Mot. at 17 (citing R. 17)). The day before the hearing, Dr. Poitier evaluated Ms. Wright and documented significant abnormalities, including disheveled appearance, uncooperative attitude, fast speech, agitated motor behavior, inappropriate affect, angry mood, loose associations in thought process, scattered thought content, poor insight, and poor reliability. (R. 799). Dr. Poitier also noted that Ms. Wright was "agitated [and] disruptive" and that a medication change was required. (R. 800). Given her poor insight and reliability, coupled with her deteriorating mental functioning the day prior to the hearing, she contends that her testimony at the hearing could not be taken at face value but, instead, should be considered with knowledge that they are the statements of a woman suffering from

20

a chronic mental illness which is characterized by a "loss of contact with reality." (Mot. at 13).

Ms. Wright next argues that the Function Report (Ex. 7E/4, 5-7) cited by the ALJ does not support her findings of a moderate limitation. (Mot. at 18-19). She points out that, contrary to the ALJ's findings, the Function Report does not document that Ms. Wright shops in stores. (R. 16 (citing Ex. 7E/4)). Although she did check off that she shopped in stores, she stated immediately below that "my mother does my shopping for me." (R. 357). She also points out that, in that same report, she stated that it is "not very often" that she spends time with others and that she does not participate in social activities because "I can't get along with others," and that she has "rapid speech which affects my ability to communicate." (R. 359).

Lastly, Ms. Wright argues that many of the treatment notes cited by the ALJ are either not relevant or do not support her findings. (Mot. at 19). In total, the ALJ cites to nineteen different treatment notes to support her finding that Ms. Wright was "often noted to be cooperative with appropriate mood and affect." (R. 16 ("*see, e.g.*, 1F/2, 4, 5, 6, 7, 8, 11, 16; 13F/67; 14F/7, 8, 9, 16, 17, 18; 16F/8, 17; 18F/4, 7)). Ms. Wright argues that seven of the nineteen examinations are from before the application date and, therefore, are not relevant. (Mot. at 16). Moreover, she argues that seven of the remaining twelve examinations do not support the ALJ's findings that that Ms. Wright was "cooperative with appropriate mood and affect." (R. 16). *See* Exs. 14F/7 (R. 676) ("inappropriate" affect); 14F/8 (R. 677) ("labile" affect and "angry" mood); 14F/9 (R. 678) ("labile" affect); 14F/16 (R. 685) ("labile" affect); 14F/17 (R. 686) ("labile" affect); 18F/4 (R. 802) ("inappropriate" affect and "anxious" mood); 18F/7 (R. 805) ("inappropriate" affect).

21

The Court finds that although the above issues raised by Ms. Wright may not, standing alone, be sufficient to warrant remand, when considered together, these disparities raise credible issues regarding the ALJ's consideration of the evidence supporting her determination. Thus, the Court cannot find that the ALJ's determination that Ms. Wright has only a moderate limitation in interacting with others is supported by "such relevant evidence as a reasonable person would accept as adequate to support [that] conclusion." *Simon*, 7 F.4th 1103 (citing *Moore*, 405 F.3d at 1211).

For the foregoing reasons, the Court finds that the ALJ's determination regarding Ms. Wright's limitation in interacting with others is not supported by substantial evidence and remands with instructions that the ALJ reassess the evidence concerning this limitation.

### 2.   *Adapting Or Managing Oneself*

Ms. Wright next argues that the ALJ's finding that she has a moderate limitation in the domain of adapting or managing oneself is not supported by substantial evidence, warranting remand. (Mot. at 19).

The domain of adapting or managing oneself refers to the ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). Examples include responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.*

In support of her finding of a moderate limitation in this domain, the ALJ states that "the record reflects that the claimant's psychiatric symptoms have remained generally stable

22

with medication and routine treatment despite significant external stressors and she has not required emergency or inpatient treatment for psychiatric symptoms since March 2017." (R. 16). Here, Ms. Wright again argues that the ALJ's finding that she "remained stable with medication and routine treatment" is not supported by substantial evidence. (Mot. at 20 (citing Mot. at 12-13)).

The Court has already addressed the ALJ's determination that Ms. Wright has "remained stable with routine medication management." *Supra*, Section VI, A. As discussed in Section VI, A, *supra*, the Court finds that the ALJ's determination that Ms. Wright has remained stable with routine medication management is supported by the evidence, which the ALJ articulated. Thus, for the same reason, the Court denies Plaintiff's Motion for Summary Judgment on grounds that the ALJ's determination regarding Ms. Wright's limitation in adapting or managing oneself is based on substantial evidence.

For the foregoing reasons, the Court remands with instructions that the ALJ reassess Ms. Wright's limitation in the domain of interacting with others.

### C. Whether The ALJ's RFC Assessment Is Supported By Substantial Evidence

Ms. Wright next argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence. (Mot. at 21).

The RFC finding is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)). It is the most a claimant can do despite her limitations and consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 416.945(a). An ALJ will "assess and make a finding about [the claimant's]

residual functional capacity based on all the relevant medical and other evidence." 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (3). The ALJ must consider all of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 416.945(a)(2). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Schink*, (citing 20 C.F.R. § 404.1545(b)-(d)). Social Security Ruling 96-8p explains that the RFC must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . ." SSR 96-8p, 1996 WL 374184 (S.S.A. 1996).

The ALJ determined that Ms. Wright has the RFC to perform light work except she must avoid concentrated exposure to extreme heat, extreme cold, and humidity; she must avoid even moderate exposure to vibrations and work hazards; she is limited to occasional stooping and balancing; she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she is limited to frequent kneeling, crouching, and crawling; she can understand and remember simple instructions; she can perform simple, routine, and repetitive tasks; she can make simple work-related decisions; she is able to interact frequently with supervisors, and occasionally with coworkers and with the general public; and she cannot perform occupations requiring fast-paced production. (R. 17).

Ms. Wright argues that the ALJ's RFC assessment is not supported by substantial evidence for three reasons: (1) it incorporates the ALJ's findings regarding the "paragraph B" domains which (as detailed above) she argues are not based on substantial evidence; (2) the ALJ's reasons for according great weight to the opinions of the State agency psychological consultants are not based on substantial evidence; and (3) the physical RFC is not based on substantial evidence. (Mot. at 21-24).

24

The Court discusses each of Ms. Wright's arguments regarding her RFC below.

**1.  *Whether the ALJ's Findings In the Paragraph B Domains Are Supported By Substantial Evidence***

In her decision, the ALJ claimed that her RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. 17). Ms. Wright first argues that, because the ALJ's findings regarding the domains are not supported by substantial evidence, it follows that the ALJ's mental RFC assessment, which is a more detailed assessment, also cannot be based on substantial evidence, warranting remand. (Mot. at 21 (citing Mot. at 16-20)). The Court has already addressed the ALJ's findings in the paragraph B domains in Section VI, B, above, and found that the ALJ's determination that Ms. Wright has a mild limitation in interacting with others is not supported by substantial evidence. *Supra*, Section VI, B. Thus, to the extent the ALJ's RFC assessment is based on this domain, the Court grants Plaintiff's Motion for Summary Judgment and remands the case with instructions that the ALJ reassess Ms. Wright's RFC after reassessing the severity of her limitation in interacting with others.

**2.  *Whether The ALJ's Reasons For According Great Weight To The Opinions of Drs. Jackson And Meyers Are Based On Substantial Evidence***

In assessing Ms. Wright's mental RFC, the ALJ accorded "great weight" to the opinions of the State agency psychological consultants, Dr. Jackson and Dr. Meyer, who reviewed the evidence of record on May 12, 2017, and October 24, 2017, respectively. (R. 117-19, 122-26, 136-37, 141-43). The ALJ explains that she accorded these opinions great weight because she found that they are:

> supported by detailed discussions of the relevant medical evidence and are generally consistent with the record as a whole, which as discussed above, shows a long history of mental health treatment, but generally shows stable symptoms

with medication and routine care. However, based on the claimant's testimony that she is able to get along with everyone to a certain extent and the treatment records, which generally note the claimant to be cooperative, the undersigned finds that she can tolerate frequent contact with supervisors and occasional contact with coworkers and the public (*see*, *e.g.*, Hearing Testimony; 1F/5; 17F/13).

(R. 22). Ms. Wright argues that the ALJ's reasoning is not supported by substantial evidence for three reasons: (1) the ALJ's findings that the mental health evidence of record "generally shows stable symptoms with medication and routine care" is not supported by the record; (2) the opinions of the State agency psychological consultants are outdated because they were not able to review Dr. Poitier's more recent treatment notes; and (3) the ALJ's reliance on Ms. Wright's hearing testimony was misplaced. (Mot. at 22).

The Court has already addressed the ALJ's determination that Ms. Wright has "remained stable with routine medication management" and found that it is based on substantial evidence. *Supra*, Section VI, A. For those same reasons, the Court rejects Ms. Wright's argument based on the same grounds here.

Moreover, Ms. Wright's argument that the opinions of Drs. Jackson and Meyers should not be given great weight because they are outdated is not persuasive. Drs. Jackson and Meyers evaluated Ms. Wright on May 12, 2017, and October 24, 2017, respectively — after she applied for benefits. In forming their opinions, they reviewed the evidence of record up to that point in time. Although Drs. Jackson and Meyers did not review the entire record, neither did any other medical source. Nor is it their responsibility to do so. It is the ALJ's responsibility to review the entire record, evaluate the relevant evidence, and resolve any conflicts in the evidence. *See* 20 C.F.R. §416.927 (Evaluating opinion evidence for claims filed before March 27, 2017)*, Richardson v. Perales*, 402 U.S. 389, 399, (1971) ("The trier of fact has the duty to resolve [conflicting medical evidence]"). Here, the ALJ reviewed the record in its

entirety and found that the opinions of Drs. Jackson and Meyers were "generally consistent with the record as a whole" which showed "stable symptoms with medication and routine care." (R. 22). The Court finds no reason to disturb the ALJ's finding regarding Drs. Jackson and Meyer.

Lastly, Ms. Wright reasserts her argument that the ALJ's reliance on Ms. Wright's hearing testimony was misplaced due to her deteriorating mental condition at the time. (Mot. at 22 (citing Mot. at 13-14). The Court is not persuaded by Ms. Wright's argument that the ALJ was incorrect to rely on her hearing testimony because of her mental impairments, in part because a ruling in Ms. Wright's favor would eliminate the ALJ's ability to question and evaluate a claimant if he or she suffers from schizophrenia, bipolar disorder, or any number of other mental conditions. Moreover, Ms. Wright's argument here contradicts her earlier position that the ALJ erred in not accepting her testimony regarding her symptoms. *See* (Mot. at 12). Accepting Ms. Wright's position would require the ALJ to cherry pick testimony only favorable to Ms. Wright in reaching her decision. However, assuming *arguendo* that the ALJ's reliance on Ms. Wright's testimony was misplaced, the ALJ's reasons for giving great weight to Drs. Jackson and Meyers's opinions are still based on substantial evidence, including the fact that their opinions are consistent with the ALJ's earlier finding that Ms. Wright generally shows stable symptoms" with medication and routine care." *See* (R.20); *supra*, Section VI, A.

For the foregoing reasons, the Court denies Ms. Wright's Motion for Summary Judgment insofar as it is based in the ALJ's reasons for according great weight to the opinions of Drs. Jackson and Meyers.

3.  _**Whether The ALJ's Physical RFC Assessment Is Based On Substantial Evidence**_

In assessing Ms. Wright's physical RFC, the ALJ stated she accorded "great weight" to the opinions of the State agency non-examining medical consultant, Dr. Feldman, who evaluated Ms. Wright's physical impairments on October 26, 2017. (R. 22). Ms. Wright argues that, in doing so, the ALJ failed to include a key finding made by Dr. Feldman and, moreover, that the ALJ's reasons for according the opinion great weight are not based on substantial evidence.  (Mot. at 23).

In assessing Dr. Feldman's opinion, the ALJ stated the following:

> As for the opinion evidence, the undersigned gives great weight to the assessment of Warren Feldman, M.D., the State Agency medical consultant (4A). Dr. Feldman provided an opinion consistent with light work (4A). Additionally, Dr. Feldman opined that the claimant could occasionally climb and frequently stoop, kneel, crouch, crawl (4A). Furthermore, she should avoid concentrated exposure to extreme cold, extreme heat, and humidity, and avoid even moderate exposure to vibration and hazards (4A). The opinion is given great weight because it is supported by a detailed discussion of the relevant medical evidence and is consistent with the other medical evidence, which as discussed above, shows a long history of pain complaints, but generally shows few significant objective abnormalities (_see_, _e.g._, 2F/1–2; 13F/66–67; 17F/13–14). However, based on additional evidence received at the hearing level, the undersigned has given the claimant the benefit of any doubt and further limited her to occasional stooping and balancing with no climbing of ladders, ropes, or scaffolds to account for her subjective complaints of balance problems.

(R. 22). Ms. Wright avers the ALJ erred by giving great weight to certain portions of Dr. Feldman's opinion while not including his observation that she "should avoid activities that would cause her to change the position of her back frequently and climbing should be avoided as much as possible" (Mot. at 23 (citing R. 22, 140)).

When prompted to rate Ms. Wright's postural limitations, Dr. Feldman opined that she could occasionally climb and frequently stoop, kneel, crouch, and crawl. (R. 139-40). When prompted to explain these postural limitations, Dr. Feldman explained that "[d]ue to

28

the nature of [claimant's] impairments, she should avoid activities that would cause her to change the position of her back frequently and climbing should be avoided as much as possible." (R. 140). In determining Ms. Wright's physical RFC, the ALJ referred to Dr. Feldman's opinions regarding her postural limitations but did not refer to the doctor's explanation for his opinions. *See* (R. 22 ("Dr. Feldman opined that the claimant could occasionally climb and frequently stoop, kneel, crouch, crawl.")).

The Court finds that it is not clear from the Decision whether Dr. Feldman's explanation that Ms. Wright should avoid activities that would cause her to change the position of her back frequently contradicts his finding that she could occasionally climb and frequently stoop, kneel, crouch, crawl. The Court acknowledges that the ALJ is not required to mechanically recite all the evidence leading to her determination, (*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)), and that the ALJ's decision should not be disturbed based merely on conjecture. *Cf. Moore*, 405 F.3d at 1213 (conjecture that claimant's physicians "*would most likely* disagree with the ALJ's findings" insufficient to disturb RFC finding supported by substantial evidence) (emphasis in original). However, the ALJ's physical RFC assessment cannot be reconciled with Dr. Feldman's opinion, absent from the Decision, that Ms. Wright should avoid activities that would cause her to change the position of her back frequently.

On the other hand, the Court does not agree that the ALJ ignored MRI studies from 2019 that contain objective abnormalities. (Mot. at 23-24). Rather, the ALJ's Decision reflects that she did in fact discuss the MRIs at issue. *See* (R. 14 (noting "[a]n MRI of the right shoulder showed multiple abnormalities"), R. 15, (citing to imaging including August 2019 cervical, thoracic, lumbar spine MRIs in noting imaging has shown some evidence of stenosis in the

lumbar and cervical spine); R. 18 (citing to imaging including March 2019 cervical and lumbar spine x-rays in noting record showed degenerative disc disease in the cervical and lumbar spine as well as retained bullet fragments in the back from an earlier shooting)).

Thus, the Court finds that the ALJ's physical RFC assessment is not sufficiently supported by the evidence because it is not clear that the ALJ properly considered all of Dr. Feldman's opinions, and therefore, the Court finds that remand is also warranted for the ALJ to reassess Ms. Wright's physical RFC or better articulate the reliance on Dr. Feldman's opinions.

### D. Whether The Commissioner Sustained Her Burden Of Establishing Other Work In The National Economy That Ms. Wright Can Perform

Ms. Wright asserts that, because the RFC assessment is not supported by substantial evidence, the vocational expert's testimony cannot provide support for the ALJ's findings because the hypothetical posed to him did not comprehensively describe her impairments. (Mot. at 25).

At step five of the inquiry, the burden of proof temporarily shifts to the Commissioner to show "whether significant numbers of jobs exist in the national economy that the claimant can perform." *Winschel*, 631 F.3d at 1180. Where there are nonexertional limitations, the Commissioner "must introduce independent evidence, preferably through a vocational expert's testimony," of the existence of such jobs. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). In order for the vocational expert's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotation marks omitted). While the ALJ need not list "every symptom of the claimant," the hypothetical must provide the vocational expert

with a complete picture of the claimant's RFC. *See Ingram*, 496 F.3d at 1270. That is to say the hypothetical must include the claimant's impairments or "otherwise implicitly account for these limitations." *See Winschel*, 631 F.3d at 1181.

Here, the ALJ specifically found that Ms. Wright cannot return to her past relevant work. (R. 20). Therefore, the burden of proof shifted to the Commissioner to prove that Ms. Wright is capable, considering her age, education, past work experience, and RFC, of engaging in other work. In concluding that Ms. Wright could successfully adjust to other work that exists in significant numbers in the national economy, the ALJ relied on a hypothetical posed to the vocational expert regarding whether occupations exist in the national economy that someone with Ms. Wright's age, education, past work experience, and RFC could perform. (R. 106-109). The vocational expert testified that a hypothetical individual with Ms. Wright's age, education, past work experience, and RFC can perform light unskilled work as a laundry sorter, mail clerk/sorter, and produce sorter. (R.at 24-25, 106-109).

Ms. Wright asserts that the vocational witness testimony cannot provide support for the ALJ's findings because the hypothetical posed to him did not comprehensively describe her impairments. (Mot. at 25). Specifically, she alleges that the ALJ's questioning failed to consider the "episodic nature" of Ms. Wright's schizoaffective disorder, bipolar type. (Mot. at 25).

In support of her argument, Ms. Wright relies on *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020). In *Samuels*, the Eleventh Circuit held that the hypothetical the ALJ posed to the vocational expert was improper because it did not "accurately describe[] all the mental restrictions found for [claimant] in the ALJ's decision." *Id*. at 1046. Specifically, the hypotheticals did not account for unexcused absences or time

spent off-tasks, which were limitations caused by the claimant's bipolar disorder that were reflected in the record. *Id.* at 1047. Because the ALJ asked the vocational expert a hypothetical question "that failed to include or otherwise implicitly account for" the claimant's impairments, the Eleventh Circuit found that the expert's testimony was "not 'substantial evidence' and cannot support the ALJ's conclusion" that the claimant "could perform significant numbers of jobs in the national economy." *Id.* (internal citation omitted).

Here, the ALJ made no findings—and Ms. Wright points to no evidence in the record— regarding difficulties Ms. Wright has with completing a normal workweek or related "episodic" problems like those exhibited by the claimant in *Samuels*. Accordingly, the Court finds that the ALJ did not err in failing to ask the vocational expert about the "episodic nature" of Ms. Wright's mental impairments because, unlike in *Samuels*, no substantial evidence of the "episodic nature" of Ms. Wright's mental impairments exist in the record. *See id.* at 1046-47.

However, because the Court is remanding the case with instructions for the ALJ to reassess Ms. Wright's mental limitation in the domain of interacting with others and to reassess her physical limitations to consider the opinion that Ms. Wright should avoid activities that cause her to change the position of her back, the ALJ will need to reevaluate Ms. Wright's RFC. Therefore, the ALJ will also need to pose a new hypothetical to the vocational expert based on the new RFC.

For the foregoing reasons, the Court grants Ms. Wright's Motion for Summary Judgment with instructions that the ALJ pose hypotheticals to the vocational expert consistent with Ms. Wright's newly assessed RFC.

## VII.   CONCLUSION

For the reasons set forth above, the Court finds that this case should be remanded; and the ALJ should reassess Ms. Wright's mental limitations in the domain of interacting with others and her physical limitations in light of Dr. Feldman's opinion that Ms. Wright should avoid activities that cause her to change the position of her back. Based on the foregoing reassessments, the ALJ should reevaluate Ms. Wright's RFC, including posing a new hypothetical to the vocational expert.

Accordingly, it is hereby

**ORDERED and ADJUDGED** that

1. Plaintiff's Motion for Summary Judgment [ECF No. 18] is **GRANTED**;

2. Defendant's Motion for Summary Judgment [ECF No. 25] is **DENIED**; and

3. This case is **REMANDED** for reconsideration by the Administrative Law Judge in accordance with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of September, 2022.

_____

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE